1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MONTE G. ATKINSON,

11             Plaintiff,                    No. 2:10-cv-02072-KJN

12        v.

13   MICHAEL J. ASTRUE,
14   Commissioner of Social Security,

15             Defendant.                    ORDER
     _____/
16

17             In his motion for summary judgment, plaintiff Monte G. Atkinson (the "plaintiff")

18   seeks judicial review of a final decision of the Commissioner of Social Security (the

19   "Commissioner") that denied plaintiff's application for disability benefits under Title II of the

20   Social Security Act ("Act").[1]  (Pl.'s Mot. for Summ. J. ("Pl.'s Motion"), Dkt. No. 12 at 1.)

21             Plaintiff raises several arguments within his motion.  First, plaintiff argues that the

22   ALJ conducted a legally flawed review of plaintiff's alleged mental impairments at step three of

23   the requisite analysis.  (Pl.'s Motion at 10-14.)  As part of this argument, plaintiff claims that the

24   _____

25        [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
26   proceed before a United States Magistrate Judge.  (Dkt. Nos. 7, 9.)

1

1  ALJ did not adequately consider the "Paragraph B" and "Paragraph C" criteria of the mental

2  disorders listings within the applicable regulations.  (Id.)

3          Second, plaintiff contends that the administrative law judge (the "ALJ")

4  discounted the medical opinion of plaintiff's treating physician without providing sufficient

5  reasons, thereby rendering erroneous both the ALJ's determination of plaintiff's Residual

6  Functional Capacity ("RFC") and the step three analysis.  (Pl.'s Motion at 14-19.)  Plaintiff

7  contends that the ALJ cursorily rejected the treating physician's opinion in favor of the opinion

8  of a non-examining, state agency medical consultant.  (Id. at 16-19.)  As part of this argument,

9  plaintiff contends that the ALJ failed to address a Social Security Agency "Case Analysis" that

10 supported plaintiff's alleged inability to work in an environment with even minimal contact with

11 supervisors, coworkers, or the public.  (Id. at 15-16 (citing Administrative Record ("AR") at 221-

12 23).)

13          Third, plaintiff contends that the ALJ made an unsupported adverse credibility

14 determination regarding plaintiff's testimony about the severity of his symptoms, (id. at 19-21),

15 and plaintiff also contends that the ALJ improperly discounted a Third Party Function Report

16 completed by plaintiff's sister.  (Id. at 21-22.)  Plaintiff contends that these errors rendered the

17 RFC determination and step three determination flawed and unsupported by substantial evidence.

18 (Id. at 23.)  Plaintiff also contends that these errors rendered the ALJ's step four and step five

19 determinations erroneous, because the ALJ gave the vocational expert (the "VE") a baseless

20 hypothetical based upon a flawed RFC determination.  (Id. at 23.)

21          The Commissioner filed a cross-motion for summary judgment and opposition to

22 plaintiff's motion.  (Def.'s Mot. for Summ. J. ("Def.'s Motion"), Dkt. No. 14.)  Plaintiff filed a

23 reply ("Pl.'s Reply") in support of his motion.  (Pl.'s Reply, Dkt. No. 15.)

24          For the reasons stated below, the court partially grants plaintiff's motion for

25 summary judgment, denies the Commissioner's cross-motion for summary judgment, and

26 remands this case to the Commissioner for further proceedings.

I.      BACKGROUND[2]

        A.      Procedural Background

        Plaintiff applied for benefits on November 14, 2007.  (AR 52, 56.)  The Social

Security Administration denied plaintiff's applications both initially and upon reconsideration.

(AR 10.)

        On May 13, 2009, the ALJ conducted a hearing regarding plaintiff's claims.  (AR

10-16.)  Plaintiff initially alleged a disability onset date of November 10, 2007; subsequently, the

ALJ granted plaintiff's request to amend the onset date to November 11, 2006.  (AR 10.)

Plaintiff, who was represented by an attorney, testified at the hearing.  (AR 17-51.)  A vocational

expert ("VE") also testified at the hearing.  (Id.)  During the hearing, plaintiff confirmed that his

previous employment included work as a computer operator, "mud logger," and possibly work in

a liquor store, although he could not specifically recall the timing of the liquor store work.  (AR

19-27.)

        In a decision dated September 28, 2009, the ALJ determined that plaintiff was not

disabled.[3]  (AR 10-16.)  In reliance on the VE's testimony, the ALJ also found that plaintiff was

---

        [2] Because the parties are familiar with the factual background of this case, including
plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
facts related to plaintiff's impairments and medical history will be addressed only insofar as they
are relevant the issues presented by the parties' respective motions.

        Additionally, to the extent the undersigned uses the present tense in referring to or
describing plaintiff's alleged conditions or functional abilities, or the ALJ's or Appeals Council's
characterizations of the same, the undersigned clarifies that such references are to plaintiff's
conditions or functional abilities at the time of the ALJ's or Appeals Council's decision, unless
otherwise indicated.

        [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income ("SSI") is paid
to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both provisions,
disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to
"a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  20 C.F.R. §§
423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
following summarizes the sequential evaluation:

1   capable of performing his past relevant work as a computer operator.  (AR 15-16.)  Additionally,

2   and also in reliance on the VE's testimony, the ALJ found that plaintiff could perform other

3   work, such as light, unskilled work as a poultry dresser.  (AR 15-16.)  The ALJ's decision

4   became the final decision of the Commissioner when the Appeals Council denied plaintiff's

5   request for review.  (AR 1-4.)  Plaintiff subsequently filed this action.

6          B.     Medical Evidence

7                 Several medical opinions have been rendered regarding plaintiff's medical issues

8   and functional limitations.  Plaintiff does not dispute the ALJ's finding that plaintiff has no

9   limitations on his ability to do work-related *physical* activities, and accordingly, the

10  undersigned's analysis addresses plaintiff's alleged ability to do work-related *mental* activities.

11                Plaintiff's treating psychiatrist, Dr. Inmas Coquia, treated plaintiff on at least six

12  occasions, with treatment notes evidencing each occasion.  (AR 180-81, 182-83, 237-38, 287-89,

13  307-08, 325-28.)  In her "Medical Assessment of Ability To Do Work Related Activities

14  _____

15          Step one:  Is the claimant engaging in substantial gainful activity?
            If so, the claimant is found not disabled.  If not, proceed to step
16          two.

17          Step two:  Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, then a finding of not disabled is
18          appropriate.

19          Step three:  Does the claimant's impairment or combination of
            impairments meet or equal an impairment listed in 20 C.F.R., Pt.
20          404, Subpt. P, App.1?  If so, the claimant is automatically
            determined disabled.  If not, proceed to step four.
21
            Step four:  Is the claimant capable of performing his past work?  If
22          so, the claimant is not disabled.  If not, proceed to step five.

23          Step five:  Does the claimant have the residual functional capacity
            to perform any other work?  If so, the claimant is not disabled.  If
24          not, the claimant is disabled.

25  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in
    the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The
26  Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

                                                4

(Mental)," Dr. Coquia diagnosed plaintiff with anxiety disorder, major depression, personality disorder with schizoid traits, and social phobia.  (AR 284-86.)  Dr. Coquia also assessed plaintiff's mental ability to engage in work-related activities.  (Id.)  She opined that plaintiff had "marked" impairments in his ability to follow work rules, relate to co-workers, make simple work-related decisions independently, interact with supervisors, behave in an emotionally stable manner, sustain an ordinary work routine without special supervision, and demonstrate reliability.  (Id.)  She opined that plaintiff had "extreme" impairments in his ability to deal with stress and deal with the public.  (Id.)  She also opined that plaintiff had "moderate" impairments in his ability to maintain attention/concentration for at least two straight hours.  (Id.)  In the treatment notes arising from her six encounters with plaintiff, Dr. Coquia assessed plaintiff as having a Global Assessment of Function ("GAF") score of 51-60 on five occasions (AR 180-81, 182-83, 237-38, 287-89, 307-08), and a GAF score of 61-70 on one occasion (AR 325-28).

Plaintiff also received mental health treatment from various mental health physicians affiliated with Kaiser, including Dr. Anina Schwartz (AR 167, 172), Dr. Aileen Yap-Lacap (AR 181-87), Dr. Thomas Elmore (AR 178-79, 241-45, 300-02, 313-16, 319-20, 321-23, 330-32).  Dr. Elmore, who treated plaintiff on multiple occasions, sometimes assessed plaintiff's GAF score as 51-60, and sometimes assessed it as 61-71.  (AR 179, 242, 245, 302, 315.)  While the record contains treatment notes from these physicians, the record does not contain the physicians' ultimate medical assessments of plaintiff's ability to do work-related mental activities.

A state agency non-examining medical consultant, psychologist Dr. P. Davis, completed a "Psychiatric Review Technique" form analyzing plaintiff's diagnoses, symptoms, and functional limitations arising from his mental health issues.  (AR 203-16.)  Dr. Davis opined that plaintiff could perform simple and repetitive tasks with little general public and co-worker contact, that he could adapt to a stable work setting, and should work independently.  (AR 219.)  Another agency non-examining medical consultant, psychiatrist Dr. K.J. Loomis, concurred with

5

Dr. Davis' opinions in a Social Security Administration "Case Analysis."  (AR 277.)

A separate Social Security Administration "Case Analysis," signed by a Dr. Thien P. Nguyen, contained the opinion[4] that plaintiff lacked the ability to sustain substantial gainful activity in an environment where he would have even minimal contact with supervisors, coworkers, or the public.  (AR 221-23.)

C.     Summary of the ALJ's Findings

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  (AR 16.)  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since November 11, 2006, plaintiff's amended alleged date of onset.  (AR 12.)  At step two, the ALJ concluded that plaintiff had the following "severe" impairments: "generalized anxiety disorder (GAD), unspecified; depression, major, recurrent, and a personality disorder, schizoid."  (AR 12.)

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal any impairment or combination of impairments listed in the applicable regulations.[5]  (AR 12.)  In order to determine whether a claimant's mental condition meets a

---

[4]   The parties dispute the exact source of this particular statement.  (Pl.'s Motion at 7, 15 [attributing statement to a "Dr. Pool"]; Def.'s Motion at 13 n.4 [attributing statement to agency disability examiner John Dijanich].)

[5]   In order to qualify as disabled at step three of the evaluation, a claimant must meet or exceed the listed impairments in Appendix 1 to Part 404 of the regulations.  Holohan v. Massanari, 246 F.3d 1195, 1203 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d).)  In order to meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in Paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in Paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work.  Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.)  In order to satisfy the criteria in paragraph B, the claimant's paragraph A impairments must result "in at least two of the following":

> 1. Marked restriction in the activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Deficiencies of concentration, persistence or pace resulting in
> frequent failure to complete tasks in a timely manner (in work
> settings or elsewhere); or

1   listed impairment, the ALJ must consider: (1) whether specified diagnostic criteria ("Paragraph

2   A" criteria) are met; and (2) whether specified functional restrictions are present ("Paragraph B"

3   criteria). Lester, 81 F.3d at 828 (citing 20 C.F.R. § 404.1520a). If the claimant's mental

4   impairment is severe, the ALJ must determine if it meets or is equivalent in severity to a listed

5   mental disorder. 20 C.F.R. § 416.920a(d)(2). This determination is accomplished by comparing

6   the medical findings pertaining to the claimant's impairment "and the rating of the degree of

7   functional limitation to the criteria of the appropriate listed mental disorder." Id. The degree of

8   functional limitation for the first three Paragraph B criteria is rated as none, mild, moderate,

9   marked, or extreme. 20 C.F.R. § 416.920a(c)(4). The final Paragraph B criteria is rated as none,

10  one or two, three, four or more. Id.

11          Simply put, after the ALJ determines plaintiff's Paragraph A criteria, the ALJ

12  reviews the medical findings and rates plaintiff's functional limitations to determine if they

13  satisfy the Paragraph B criteria. A plaintiff who satisfies the Paragraph A criteria must be found

14  disabled if his or her impairments result in two or more functional limitations found in Paragraph

15  B. Lester, 81 F.3d at 828-29. Alternatively, "[t]he required level of severity for these disorders

16  is met when the requirements in *both* A and B are satisfied, *or* when the requirements in C are

17  satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06 (emphasis added).

18          Here, the ALJ concluded[6] that plaintiff's mental functional limitations did not

19

20                  4. Repeated episodes of deterioration or decompensation in work
                    or work-like settings which cause the individual to withdraw
21                  from that situation or experience exacerbation of signs and
                    symptoms (which may include deterioration of adaptive
22                  behaviors).

23  Holohan, 246 F.3d at 1203-04 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04B; 12.06B.)

24          [6]  The ALJ did not discuss whether these limitations met or medically equaled the criteria
    of listing 12.08 ("Personality Disorders"), notwithstanding the ALJ's finding that plaintiff
25  suffered the "severe" impairment of "personality disorder, schizoid." (AR 12-13.) In his motion
    for summary judgment, plaintiff apparently does not take issue with the fact that the ALJ's
26  decision does not reference listing 12.08 ("Personality Disorders"), and accordingly, the

1   meet or medically equal "the criteria of listings 12.04 and 12.06." (AR 12-13).[7]  Specifically, the

2   ALJ concluded that plaintiff's limitations did not meet the criteria of Paragraphs B or Paragraph

3   C.  (AR 13.)

4           Between steps three and four, the ALJ assessed plaintiff's mental residual

5   functional capacity ("RFC").  The ALJ found that plaintiff had no limitations performing work-

6   related physical activities.  (AR 13.)  With respect to plaintiff's ability to perform work-related

7   *mental* activities, however, the ALJ found:

8               [T]hat the claimant has the capacity to perform work-
                related mental activities as follows: no limitations in his
9               ability to understand, remember, and carry out short,
                simple instructions; slight limitation in his ability to
10              understand, remember, and carry out detailed job
                instructions; no limitations on his ability to make
11              judgments on simple, work-related decisions; slight
                limitations in his ability to make judgments on detailed
12              work-related decisions; his ability to interact
                appropriately with the public is moderately limited; he is
13              limited to occasional exposure to the general public; his
                ability to interact appropriately with supervisors and/or
14              coworkers is slightly limited; his ability to respond
                appropriately to work pressures in a usual work setting
15              fluctuates between slight and moderate; and his ability to
                respond appropriately to changes in a routine work setting
16              is slightly limited.

17  (AR 13.)

18          In discussing this RFC determination, as well as in discussing the step three

19  analysis, the ALJ discounted plaintiff's treating psychiatrist's opinion regarding plaintiff's

20  capacity to perform work-related mental activities.  (AR 15.)  Dr. Coquia, the treating

21  _____

    undersigned will not address whether this omission could amount to error.

22
        [7]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 B refers to "Anxiety Related Disorders."
23  Regarding the "B" criteria stated in listing 12.06, plaintiff must demonstrate that he suffers from
    two of the four following functional restrictions to support a finding of disability: (1) marked
24  restriction of activities of daily living; (2) marked difficulties in maintaining social functioning;
    (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated
25  episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §
    12.06 B.  Listing 12.04 pertains to "Affective Disorders," and Listing 12.06 pertains to "Anxiety
26  Related Disorders."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

1   psychiatrist, had opined that plaintiff had "marked" impairments in most areas of functioning.

2   (AR 284-86.)  The ALJ's decision addressed Dr. Coquia's opinion in three sentences:

> The claimant's psychiatrist issued a medical source
> statement on October 2, 2008, regarding the claimant's
> capacity to perform work-related mental activities.
> (Exhibit 13F).  His psychiatrist stated that in most areas
> of functioning, the claimant had marked impairments.
> The undersigned is unable to fully credit the opinions of
> this psychiatrist, as they are inconsistent with the
> claimant's treatment records with the psychiatrist, who
> consistently assessed the claimant with having a GAF
> ranging as high as 70 and generally only mild symptoms
> of depression or anxiety.  (AR 15.)  Thus, the ALJ was
> "unable to fully credit the opinions" of Dr. Coquia
> because he deemed them "inconsistent with the
> claimant's treatment records with the psychiatrist, who
> consistently assessed the claimant with having a GAF
> ranging as high as 70 and generally only mild symptoms
> of depression or anxiety."

12   (AR 15.)

13          After rejecting Dr. Coquia's opinion that plaintiff had various "marked"

14   impairments in his capacity to perform work-related mental activities, the ALJ immediately

15   turned to the opinion of a non-examining state agency medical consultant.  (AR 15.)  Because of

16   the inconsistencies the ALJ perceived between Dr. Coquia's opinion and her own treatment

17   records, the ALJ found the non-examining state agency medical consultant's opinion to be "more

18   accurate" than Dr. Coquia's opinion.  (Id.)  The non-examining consultant found plaintiff to have

19   "mild to moderate anxiety and mild depressive symptoms," and the ALJ credited that opinion.

20   (Id.)

21          After assessing plaintiff's RFC, the ALJ proceeded to step four of the analysis and

22   determined that plaintiff was capable of performing his past relevant work as a computer

23   operator.  (AR 15.)

24          Due to the ALJ's finding at step four, the ALJ was not required to proceed to step

25   five of the inquiry.  However, the ALJ nonetheless continued on to step five and determined that

26   plaintiff could perform several other jobs existing in the regional economy.  (AR 16.)

II.     STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1196 (9th Cir. 2004). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  The evidence supporting a decision must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Lewin v.

1   Schweiker, 654 F.2d 631, 633 (9th Cir. 1981); accord Rand v. Sullivan, 924 F.2d 159, 161 (9th

2   Cir. 1990).

3          A failure to make adequate findings would at least necessitate a remand for a

4   redetermination of fault.  Lewin, 654 F.2d at 637.  "If additional proceedings can remedy defects

5   in the original administrative proceedings, a social security case should be remanded."  Id.  If

6   reliance has been placed on one portion of the record to the disregard of overwhelming evidence

7   to the contrary, the reviewing court must decide against the Secretary.  Harrison v. Heckler, 746

8   F.2d 480, 482-83 (9th Cir. 1984); Lewin, 654 F.2d at 635.

9   III.    ANALYSIS

10         A.     Plaintiff's Treating Psychiatrist's Opinions Were Not Actually
                  Inconsistent With Her Treatment Notes In The Way The ALJ Stated
11

12         Plaintiff argues that the ALJ improperly rejected Dr. Coquia's opinion without

13  offering valid reasons for the rejection, and that both the RFC analysis and step three analysis

14  were erroneous.  (Pl.'s Motion at 18-19 (because Dr. Coquia's opinion "indicated 'marked' level

15  impairments in a variety of essential work functions and strongly supported a finding of disabled

16  at Steps-3 and 5, remand for reconsideration of that opinion is required"); id. at 14 (because the

17  ALJ rejected Dr. Coquia's opinion, the ALJ's "Residual Functional Capacity determination was

18  in error.")  Plaintiff also argues that the ALJ accepted the opinion of a non-examining medical

19  consultant without a basis in substantial evidence.  (Id. at 18.)

20         Defendant counters that the ALJ's identification of an inconsistency between Dr.

21  Coquia's notes and her ultimate opinion sufficed as grounds for rejecting Dr. Coquia's opinion.

22  (Def.'s Motion at 10-13.)  Defendant also argues that substantial evidence supports the rejection

23  of Dr. Coquia's opinions, as well as the ALJ's decision to accept the opinion of the non-

24  examining medical consultant, Dr. Davis.  (Id.)

25         The medical opinions of three types of medical sources are recognized in social

26  security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

11

1   do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

2   claimant (nonexamining physicians)."  Lester, 81 F.3d at 830.  Generally, a treating physician's

3   opinion should be accorded more weight than opinions of physicians who did not treat the

4   claimant, and an examining physician's opinion is entitled to greater weight than a non-

5   examining physician's opinion.  Id.  "The ALJ is responsible for determining credibility and

6   resolving conflicts in medical testimony."  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.

7   1989).

8            A more complete quote from Magallanes clarifies what weight will typically be

9   ascribed to treating physicians' opinions:

10              We afford greater weight to a treating physician's opinion
                because he is employed to cure and has a greater
11              opportunity to know and observe the patient as an
                individual. [Citation.] The treating physician's opinion is
12              not, however, necessarily conclusive as to either a physical
                condition or the ultimate issue of disability. [Citations.] The
13              ALJ may disregard the treating physician's opinion whether
                or not that opinion is contradicted. [Citations.]  For
14              example, the ALJ need not accept a treating physician's
                opinion which is brief and conclusionary in form with little
15              in the way of clinical findings to support [its] conclusion.
                [Citation.]  To reject the *uncontroverted* opinion of a
16              claimant's physician, the ALJ must present *clear and*
                *convincing* reasons for doing so. [Citations.]

17
                To reject the opinion of a treating physician which *conflicts*
18              *with* that of an examining physician, the ALJ must make
                findings setting forth *specific, legitimate reasons* for doing
19              so that are based on substantial evidence in the record.
                [Citations.] The ALJ can meet this burden by setting out a
20              detailed and thorough summary of the facts and conflicting
                clinical evidence, stating his interpretation thereof, and
21              making findings." [Citation.] [ . . .]  [T]o the extent that
                [the nontreating physician's] opinion rests on objective
22              clinical tests, it must be viewed as substantial evidence . . . .
                [Citations.]  Where medical reports are inconclusive,
23              questions of credibility and resolution of conflicts in the
                testimony are functions solely of the Secretary. [Citations.]

24

25   Magallanes, 881 F.2d at 751 (emphasis added) (internal quotation marks and citations omitted)

26   (upholding ALJ's rejection of treating physician's opinion where rejection was based *partially*,

but not *solely*, upon the testimony of a *non-examining, non-treating* physician); accord Lester, 81
F.3d at 830 (holding that ALJ improperly rejected treating physician's opinion where the
rejection was based *solely* upon the testimony of a *non-treating, non-examining* medical advisor);
accord Batson, 359 F.3d at 1194-96.  Whether or not an ALJ finds that a treating physician's
opinion is contradicted by other evidence in the record, "an ALJ may discredit treating
physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by
objective medical findings."  See Batson, 359 F.3d at 1195 (citations omitted).

      "Clear and convincing" reasons must be provided when an ALJ rejects a treating
physician's opinion where nothing in the record controverts it.  Magallanes, 881 F.2d at 751.  If
evidence in the record conflicts with the treating physician's opinion, or if the opinion is
conclusory, however, the ALJ must give "specific and legitimate" reasons before discounting that
opinion.  Id. (citing cases); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)
(holding that treating physician's opinion is "not binding on the ALJ with respect to the existence
of an impairment or the ultimate determination of disability," and holding that an examining
physician's opinion alone constituted substantial evidence where it rested upon his own
independent examination of the claimant); accord Batson, 359 F.3d at 1195.

      In sum, a treating physician's opinion is not automatically controlling.  See
Magallanes, 881 F.2d at 751; Batson, 359 F.3d at 1194-96.  An ALJ is entitled to discount a
treating physician's opinion in light of conflicting evidence, and conflicting evidence may take
the form of an examining physician's opinion or a "contradiction" between a physician's
treatment notes and her ultimate opinion.  E.g., Lester, 81 F.3d at 830; Valentine, 574 F.3d at
692-93 (holding that the ALJ's identification of a "a contradiction" between treating the
physician's opinion and treatment progress reports constituted a specific and legitimate reason
for rejecting the opinion).

      Here, the ALJ found that Dr. Coquia's treatment notes contradicted her opinion
and, consequentially, the ALJ rejected the opinion.  (AR 15.)  The ALJ concluded that Dr.

Coquia's notes "consistently" gave plaintiff a GAF "ranging as high as 70" and found plaintiff to have "only mild symptoms of depression or anxiety," which, in the ALJ's view, conflicted with Dr. Coquia's ultimate conclusion that plaintiff had "marked" impairments.  (Id.)  After succinctly describing this so-called inconsistency, without any further discussion or detail, the ALJ rejected Dr. Coquia's opinion that plaintiff had "marked" functional limitations.  (Id.)  As described below, the ALJ failed to properly support his rejection of Dr. Coquia's opinion, and the rejection is not supported by substantial evidence.

          1.    The ALJ Rejected Dr. Coquia's Opinion Based On A Selective Reading Of The Treatment Notes In The Record

It is error to read a treating physician's notes "selective[ly]" rather than"in full and in context."  Holohan, 246 F.3d at 1204-05.  Relatedly, an ALJ cannot properly reject a treating physician's opinion as being "inconsistent" with his or her treatment notes if the "inconsistency" is only, for instance, that plaintiff showed "some improvement" during treatment.  Id.[8]  "Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions."  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (holding that the ALJ erred by discounting the opinion of an examining physician due to a perceived "inconsistency" between that opinion and the claimant's testimony, because the perceived "inconsistency" arose from the ALJ's "quoting an isolated sentence" from the physician's report and a "plain reading of the record" revealed no actual inconsistency).

In Holohan, the ALJ rejected the treating physician's opinion that the claimant suffered from "marked" impairments with respect to "performance of any work activity due to

---

[8]  Various pre-Holohan decisions have also confirmed that a physician's comments about a patient's improvement are an insufficient basis to reject a physician's conclusions or diagnoses. See Lester, 81 F.3d at 833 ("Occasional symptom-free periods-and even the sporadic ability to work-are not inconsistent with disability."); Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Rhodes v. Schweiker, 660 F.2d 722, 723 (9th Cir. 1981) (ALJ improperly rejected treating physician's opinion in part due to physician's report that plaintiff's condition had improved).

anxiety/panic attacks and poor concentration." Holohan, 246 F.3d at 1204-05.  The ALJ in

Holohan rejected the opinion because he found it to be "totally inconsistent with [the

physician's] own treatment notes and records . . ." Id.  In particular, that ALJ stated that the

physician's treatment notes "indicate control of panic attacks with" medication, a "great

improvement" in the plaintiff's condition, and the physician's finding that plaintiff's panic

attacks increased with inactivity such that she was "happy" when she joined the YMCA. Id.

The Ninth Circuit Court of Appeals found legal error in the ALJ's rejection of the

treating physician's opinion on these grounds. Id.  The court found that the ALJ was too

"selective" in his reliance on the treating physician's notes, and that he "exaggerate[d]" their

contents. Id. at 1205.  For instance, the court's review of the record confirmed that, while the

treating physician's notes revealed that plaintiff was "doing better" on one occasion, the notes

also explained that this meant plaintiff's panic attacks were only "15% better." Id.  Similarly, the

notes never described a "great improvement" in plaintiff's condition. Id.  The court concluded

that the treating physician's notes "must be read in context of the overall diagnostic picture he

draws.  That a person who suffers from panic attacks, anxiety, and depression makes some

improvement does not mean that the person's impairments no longer seriously affect her ability

to function in a workplace." Id. (emphasis added); accord Ryan, 528 F.3d at 1201 (citing

Holohan and holding that treatment notes reflecting a patient's "improvement" did not

undermine the physician's repeated conclusions and diagnosis).  The court concluded that the

ALJ's proffered reason for rejecting the treating physician's opinion — that the opinion

"conflicted with" that physician's treatment notes — was not supported by substantial evidence.

Id.  "When read in full and in context, [the treating physician's] treatment notes are consistent

with his opinion letter," and, as such, the "substantial evidence does not support the specific

////

////

////

1    reason the ALJ gave for rejecting" that opinion.[9]  Id. (emphasis added).   Accordingly, in part

2    because the ALJ erred in rejecting the treating physician's opinion due to a non-existent

3    inconsistency, the court reversed and remanded with instructions to award benefits.  Id. at 1205,

4    1211.

5              a.       Dr. Coquia's Treatment Notes Consistently Described Plaintiff's
                        Symptoms As "Moderate"

6

7              Here, the ALJ was selective in his review of Dr. Coquia's notes and exaggerated

8    their contents.  See Holohan, 246 F.3d at 1204-05.  The ALJ inaccurately stated that Dr. Coquia's

9    treatment notes reflect that Dr. Coquia "consistently assessed the claimant with . . . generally

10   only mild symptoms of depression or anxiety."  (AR 15.)  A review of Dr. Coquia's treatment

11   notes confirms that Dr. Coquia consistently assessed plaintiff as having "moderate symptoms" of

12   anxiety, an assessment always noted on the same line as the GAF scores of 51-60.  (AR 180-81,

13   182-83, 237-38, 287-89, 307-08.)  According to the treatment notes in the record, on only one

14   visit out of six did Dr. Coquia's notes describe plaintiff's symptoms as "mild."  (AR 325-28.)

15   The ALJ did not describe how he read Dr. Coquia's treatment notes as reflecting only "mild"

16   symptoms, and in any event, the undersigned's review of those notes does not reveal a

17   "consistent" use of the term "mild" with respect to plaintiff's anxiety symptoms.  Moreover, even

18   if Dr. Coquia's treatment notes consistently assessed plaintiff's symptoms as "mild," which they

19   do not, the ALJ did not describe how such assessment necessarily conflicts with a conclusion that

20   plaintiff has various "marked" functional limitations.

21             Taking Dr. Coquia's notes "in full and in context," Dr. Coquia's onetime

22

23          [9]  The court also noted that the ALJ accepted the opinions of "an examining physician
     who examined [plaintiff] only once and a reviewing physician who merely checked boxes
24   without giving supporting explanations," and explained that this evidence was "insufficient to
     outweigh the opinion of a treating physician who cared for [plaintiff] over a period of time and
25   who provided an opinion supported by explanation and treatment records."  Holohan, 246 F.3d at
     1206 (holding that when the treating physician's opinion is given "appropriate consideration,"
26   the ALJ's finding of "improvement" in plaintiff's condition was not supported by substantial
     evidence.)

                                                    16

1   assessment of plaintiff's symptoms as "mild" is perhaps most accurately considered an

2   improvement in plaintiff's condition that is not itself sufficient to constitute an inconsistency

3   between Dr. Coquia's treatment notes and her opinion.  See Holohan, 246 F.3d at 1204-05.  The

4   record does not support the ALJ's conclusion that Dr. Coquia's treatment notes "consistently"

5   assessed plaintiff's symptoms as "mild."  (AR 15.)  Perhaps the ALJ equated "moderate

6   symptoms" of anxiety with "mild symptoms" of anxiety, but his decision does not clearly explain

7   as much.  In any event, the ALJ failed to identify particular portions of Dr. Coquia's treatment

8   notes the ALJ believed reflected an assessment of plaintiff's symptoms as "mild."  (AR 15.)

9   Accordingly, the ALJ failed to provide clear and convincing reasons, or, for that matter, specific

10  and legitimate reasons, for his rejection of Dr. Coquia's opinion, and the reasons he cursorily

11  gave were not supported by substantial evidence.  (AR 15.)

12         b.      Dr. Coquia's Treatment Notes Consistently Described Plaintiff's GAF
                   Score As "51-60"
13

14         Similarly, the treatment notes in the record do not support the ALJ's conclusion

15  that Dr. Coquia "consistently" gave plaintiff a GAF score "ranging as high as 70." (AR 15.)  In

16  actuality, the record reflects that Dr. Coquia only gave plaintiff a GAF score of "61-70" on one

17  occasion, on June 4, 2008, rather than "consistently."  (AR 325-28.)  Indeed, the treatment notes

18  for all of Dr. Coquia's five other visits with plaintiff reflect Dr. Coquia's assessment that plaintiff

19  was rated as being within the "moderate" GAF range of "51-60."  (AR 180-81, 182-83, 237-38,

20  287-89, 307-08.)  Rather than "consistently" giving plaintiff a GAF score "as high as 70," then, it

21  is more accurate to state that Dr. Coquia consistently gave plaintiff a GAF score of 51-60, and on

22  one occasion gave him a GAF score of 61-70.  (Compare AR 180-81, 182-83, 237-38, 287-89,

23  307-08 [GAF scores 51-60] with AR 325-28 [GAF score 61-70].)[10]

24  _____

25         [10]  It is possible that the ALJ mistakenly imputed another physician's treatment notes to
    Dr. Coquia and believed those notes to reveal the "inconsistency" he described.  For instance, Dr.
26  Elmore's treatment notes described plaintiff has having a GAF score of "61-70" on two

                                                    17

1        Taking these GAF scores in context of the overall diagnostic picture painted by

2   Dr. Coquia's opinion and her treatment notes, the ALJ failed to provide a proper basis for his

3   rejection of Dr. Coquia's opinions.  In finding Dr. Coquia's opinion to be inconsistent with her

4   notes, the ALJ merely "quot[ed] an isolated sentence" from the many treatment notes in the

5   record.  See Holohan, 246 F.3d at 1204-05; Nguyen, 100 F.3d at 1465.  A "plain reading of the

6   record" reveals no actual inconsistency.  See Nguyen, 100 F.3d at 1465.

7        Further, one "improvement" in GAF scores does not render Dr. Coquia's

8   treatment notes in conflict with her ultimate opinion that plaintiff has "marked" impairments.

9   See Holohan, 246 F.3d at 1205 ("That a person who suffers from panic attacks, anxiety, and

10  depression makes *some improvement* does not mean that the person's impairments no longer

11  seriously affect her ability to function in a workplace.") (emphasis added); accord Ryan, 528 F.3d

12  at 1201 (citing Holohan and holding that treatment notes reflecting a patient's "improvement"

13  did not undermine the physician's repeated conclusions and diagnosis).

14          2.      The ALJ Failed To Explain *How* Having A GAF Score Of 61-70 Would
                    Be Inconsistent With Having "Marked" Impairments
15

16       Putting aside the fact that the ALJ found an "inconsistency" based on his

17  erroneous and selective reading of the record, the ALJ's finding also suffered from an additional

18  defect.  Even if Dr. Coquia consistently gave plaintiff a GAF score of 61-70 and consistently

19  described his symptoms as "mild," neither of which is reflected in the record, the ALJ

20  nonetheless failed to explain *how* these assessments are necessarily inconsistent with opining that

21  the patient has "marked" impairments.  (AR 15.)  With no real discussion of definitions, the ALJ

22

23  occasions.  (AR 179, 302.)  Nonetheless, *Dr. Coquia's* ultimate opinions are not necessarily
    undermined because they were not always consistent with *Dr. Elmore's* treatment notes.  In any

24  event, even considering *all* the treatment notes arising from plaintiff's fourteen visits with Kaiser
    mental health professionals, plaintiff received a GAF score of "61-70" on only three occasions,

25  and received the lower GAF score of "51-60" the rest of the time.  (AR 179, 302, 328 [three
    occasions whereby plaintiff received GAF score of 61-70].)  It cannot be said that Dr. Coquia's

26  opinions were inconsistent with her own notes, or even all the various treatment notes in the
    record, when such notes are read "in full and in context."  See Holohan, 246 F.3d at 1205.

                                              18

1    concluded that it is inconsistent to give a patient a GAF score "as high as 70" *and* to determine

2    that the patient has "marked" limitations.  (AR 15.)

3           For instance, the ALJ correctly defined "marked" as "more than moderate but less

4    than extreme."  (AR 13.)  Beyond offering this one-sentence definition,[11] however, the ALJ did

5    not address the interplay between the term "marked" and the significance of having a GAF score

6    of 61-70, or how one is necessarily "inconsistent" with the other.  (Id.)

7           GAF scores range from 1–100, and in calculating a GAF score, the physician

8    considers "psychological, social, and occupational functioning on a hypothetical continuum of

9    mental health-illness."  American Psychiatric Association, Diagnostic and Statistical Manual of

10   Mental Disorders, 34 (4th ed.) ("DSM–IV").  A GAF score of 51–60 indicates "moderate

11   symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate

12   difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or

13   co-workers)."  Id. at 34.  A GAF score between 61–70 indicates "[s]ome mild symptoms (e.g.,

14   depressed mood and mild insomnia) OR some difficulty in social, occupational, or school

15   functioning . . . but generally functioning pretty well, has some meaningful interpersonal

16   relationships."  Id.

17          Given the above-stated definition of "marked" and the above-stated significance

18   of GAF scores of 51-60 and 61-70, it is not clear that a person could never simultaneously have

19   "marked" impairments and either GAF score.  At least, however, nothing in the ALJ's decision

20   explains how it is per se "inconsistent" to ascribe someone a GAF score of 61-70 and

21   simultaneously opine that the person has "marked" functional impairments.

22          Further, courts have recognized that a given GAF score is not necessarily

23

24        [11]  The applicable regulations confirm that, "[w]here we use 'marked' as a standard for
     measuring the degree of limitation, it means more than moderate but less than extreme. A
25   marked limitation may arise when several activities or functions are impaired, or even when only
     one is impaired, as long as the degree of limitation is such as to interfere seriously with your
26   ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R.
     Pt. 404, Subpt. P, App. 1, Part 12.00(C) (citing 20 C.F.R. §§ 404.1520a, 416.920a).

1   "inconsistent" with treating physician opinions simply because an ALJ summarily concludes as

2   much.  Where an ALJ fails to give specific reasons for rejecting an opinion due to an

3   inconsistency related to GAF scores, or fails to identify substantial evidence in the record

4   supporting the rejection, the ALJ's decision is erroneous.  See Guttilla v. Astrue, No. 09cv2259

5   MMA(RBB), 2010 WL 5313318, at *15 (S.D. Cal. Aug. 13, 2010) (unpublished).  In remanding

6   with direction to award benefits to the claimant, the court in Guttilla held that:

> [o]ther than stating that the GAF score of fifty is inconsistent
> with [the treating psychiatrist's] assessment, the *ALJ does not
> give any specific reason for that conclusion.* [Citation.]  He has
> not explained *how* the doctor's assessment conflicts with the
> GAF score.  As noted previously, the court's function is not to
> create a new rationale to support the administrative law judge's
> decision. [Citation.] Because the GAF score is consistent with
> some of the doctor's assessment notes, and the *ALJ does not
> identify substantial evidence in the record* to discredit it, the
> determination that a GAF score of fifty was inconsistent with
> [treating psychiatrist's] assessment is not a clear and
> convincing reason for giving his opinion little weight.

14   Id. (emphasis added and internal citations omitted) (citing Reddick v. Chater, 157 F.3d 715, 725

15   (9th Cir. 1998); Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).)

16   Accordingly, even if Dr. Coquia's treatment notes reflected that Dr. Coquia had

17   "consistently" given plaintiff a GAF score of  "61-70" and called his symptoms "mild," which is

18   not the case[12], the ALJ nonetheless failed to explain *how* such score was inconsistent with Dr.

19   Coquia's opinion that plaintiff had "marked" impairments.  Without more, the undersigned

20   concludes that the ALJ provided neither clear and convincing reasons nor, for that matter,

21   specific and legitimate reasons for rejecting Dr. Coquia's opinion regarding plaintiff's "marked"

22   mental impairments.  See Holohan, 246 F.3d at 1202 (stating "[a]n ALJ may reject the

23   uncontradicted medical opinion of a treating physician only for clear and convincing reasons

---

[12]  Dr. Coquia assessed plaintiff's GAF score as 61-70 and described his symptoms as
"mild" on only one occasion.  (AR 325-28.)  On five other occasions, Dr. Coquia gave plaintiff a
GAF score of 51-60 and called his symptoms "moderate."  (AR 180-81, 182-83, 237-38, 287-89,
307-08.)

supported by substantial evidence in the record"); <u>Lester</u>, 81 F.3d at 830 (holding that "[e]ven if

the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject

this opinion without providing specific and legitimate reasons supported by substantial evidence

in the record for so doing") (internal quotation marks omitted); <u>id.</u> at 834 (stating that "[t]he

opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies

the rejection of the opinion of either an examining physician or a treating physician"); <u>Valentine</u>,

574 F.3d at 692.

Because the ALJ did not provide valid reasons for rejecting Dr. Coquia's opinion,

this rejection renders erroneous both the RFC determination and the step three analysis: both arose

from that improper rejection.  The ALJ's decision to deem the opinion of the non-examining state

agency medical consultant as "more accurate" than Dr. Coquia's opinion was based entirely on the

ALJ's above-described selective reading of the record and resulting finding of an "inconsistency."

(AR 15.)  After a more complete review of the documents in the record, the court finds that the

ALJ failed to articulate an inconsistency between Dr. Coquia's opinion and her notes that is

actually borne out by the record.  Thus, the ALJ's basis for concluding that plaintiff does not have

an impairment or combination of impairments that met or medically equal the criteria of listings

12.04 and 12.06 at step three of the analysis, as well as the ALJ's RFC determination, is not

supported by substantial evidence.

Further, aside from the ALJ's reliance on a non-existent inconsistency, the ALJ

offered no additional grounds[13] for rejecting Dr. Coquia's opinion.  In effect, because the

"inconsistency" described by the ALJ is not actually borne out by the record, the ALJ effectively

_____

[13]  Even if the ALJ also believed Dr. Coquia's opinion to be uncompelling for other
reasons, such as, for instance, on grounds that it was not supported by objective findings, such an
unstated belief is not sufficient.  The ALJ was required to provide clear and convincing reasons
for rejecting a treating physician's uncontradicted report.  <u>See</u> <u>Rodriguez</u>, 876 F.2d at 763;
<u>Rhodes</u>, 660 F.2d at 724; <u>e.g.</u>, <u>Greasham v. Astrue</u>, No. 1:08cv01204 GSA, 2009 WL 3748283,
at *9-11 (E.D. Cal. Nov. 5, 2009) (unpublished) ("The ALJ is not bound by the uncontroverted
opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them
without presenting clear and convincing reasons for doing so.") (citing <u>Rhodes</u>).

1  rejected a treating physician's opinion in favor of a non-examining medical consultant's opinion

2  alone.  Rejecting a treating physician's opinion in favor of a non-treating physician's opinion,

3  without more, is legally erroneous.  See Lester, 81 F.3d at 830-31 (ALJ's rejection of treating

4  physician's opinion was improper where it was based *solely* upon the testimony of a *non-treating,*

5  *non-examining* medical advisor).  Indeed, a non-examining medical advisor's testimony cannot

6  "by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or

7  the examining psychologist's opinion."  Id. at 833; Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

8  1990) ("non-examining physicians' conclusion[s], with nothing more" do not constitute

9  substantial evidence controverting an examining physician's opinion.)  While the Commissioner

10  is correct that an ALJ "may disregard the treating physician's opinion whether or not that opinion

11  is contradicted," here the *only reason the ALJ offered* for rejecting such an opinion[14] was due to a

12  perceived "contradiction" that the record does not actually support.  See Magallanes, 881 F.2d at

13  751.  Accordingly, the undersigned will remand this matter to the agency for further proceedings.

14        The decision of whether to remand for further proceedings or simply to award

15  benefits is within the court's discretion.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.

16  1989).  Generally, the court should direct the award of benefits in cases where no useful purpose

17  would be served by further administrative proceedings.  Varney v. Sec'y of Health and Human

18  Servs., 859 F.2d 1396, 1399 (9th Cir. 1988).  Although the court understands the importance of

19  expediting disability claims, Varney, 859 F.2d at 1401, remanding this case for further

20  administrative proceedings will serve a useful purpose in the resolution of this case.

21        On remand, the agency should reassess plaintiff's mental impairments at step three

22  of the analysis and the RFC determination.  The reassessment should specifically address whether

23

24     [14]  The court's review is constrained to the reasons asserted by the ALJ.  Orn v. Astrue,
495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the
disability determination and may not affirm the ALJ on a ground upon which he did not rely.");

25  accord Tommasetti, 533 F.3d at1039 n.2 (declining to review reasons provided by the district
court in support of the ALJ's credibility decision that were not "expressly relied on" by the ALJ

26  during the administrative proceedings).

1   Dr. Coquia's opinion regarding plaintiff's "marked" impairments is entitled to weight.  Whether

2   or not the ALJ determines that Dr. Coquia's opinion is entitled to weight, the ALJ's decision

3   should cite to evidence in the record that supports the determination.  If, for instance, the ALJ

4   again determines that Dr. Coquia's opinions are "inconsistent" with her treatment notes, the ALJ

5   should clearly identify the perceived inconsistencies and describe how two or more given

6   statements are actually in conflict.  This remand does not preclude the ALJ from reassessing the

7   existing record and Dr. Coquia's opinion, other physicians' opinions, and/or further developing

8   the record regarding the diagnosis of plaintiff's impairments and the functional limitations

9   resulting from these conditions insofar as the remainder of the disability determination, including

10  assessment of plaintiff's RFC, is concerned.

11          B.      Because The ALJ Erred At Step Three And In His RFC Analysis, The
                    Court Need Not Address Plaintiff's Other Arguments
12

13          As noted above, plaintiff also argues that the ALJ committed several other errors,

14  namely, failing to adequately consider "Paragraphs B and C" of the mental disorders listings at

15  step three[15] (Pl.'s Motion at 10-14), making adverse credibility determinations as to

16  representations by plaintiff and plaintiff's sister regarding the severity of plaintiff's symptoms (id.

17  at 19-21), and giving the VE an unfounded hypothetical from which to base the analyses at steps

18  four and five (id. at 23).  However, the undersigned need not address these alleged errors.  The

19

20          [15] In analyzing Paragraphs B and C, for instance, the ALJ found that plaintiff's mental
    impairments did not result in "at least two 'marked' limitations or one 'marked' limitation and
    'repeated' episodes of decompensation, each of extended duration," and therefore that the
21  Paragraph B criteria "are not satisfied." (AR 13.)  The ALJ concluded that plaintiff has
    "moderate to marked difficulties" in "social functioning," but he did not describe what evidence
22  led him to this conclusion.  (Id.)  The ALJ may not have technically rated the four Paragraph B
    criteria in accordance with 20 C.F.R. § 416.920a.  The ALJ also concluded that the Paragraph C
23  criteria were not satisfied, although he did not detail what evidence led him to this conclusion.
    (Id.)  The ALJ thus concluded that plaintiff's impairments did not meet or medically equal one of
24  the listed impairments under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Id.)  As discussed herein,
    because the court remands this case, the court need not make a determination regarding the
25  propriety of the ALJ's analyses of Paragraphs A and B.  Likewise, the court need not determine
    whether more than harmless error occurred in such analyses.  Nevertheless, the Commissioner
26  should consider these issues on remand.

nature of the remand ordered herein is of a sort that will likely impact the ALJ' sequential analysis from step three through step five.  Moreover, because the remaining claims of error derive, at least in part, from the errors addressed above, the undersigned need not make a determination regarding the additional alleged errors here.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (Dkt. No. 12) is granted in part, and this matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.  The Commissioner's cross-motion for summary judgment (Dkt. No. 14) is denied.

3.  The Clerk of Court is directed to enter judgment in favor of plaintiff.

DATED:  September 12, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE